J^SULLIVAN, Judge.
Defendant, Jerry Heaton, was indicted by a grand jury on four counts of aggravated incest, in violation of La.R.S. 14:78.1. Defendant subsequently pleaded guilty to four counts of indecent behavior with a juvenile, in violation of La.R.S. 14:81. After a hearing, the trial court sentenced Defendant to three and one-half years at hard labor on each count, with the sentences to run concurrently. On appeal, Defendant argues that his sentences are excessive and that the trial court erred in ordering him to testify at his sentencing hearing.
Facts
Defendant pleaded guilty to four counts of indecent behavior with a juvenile that occurred on April 13, 1998, between September 7 and 11, 1998, on November 27, 1998, and on December 21, 1998. The victim was his thirteen-year-old stepdaughter, C. Z. ■
At the sentencing hearing on December 6, 1999, Defendant and the State called several witnesses. Defendant called his current and former spouses, who testified about their dependence on his financial support; his father, who described Defendant’s help in caring for his ill mother; and a friend, who detailed Defendant’s volunteer activities with the American Legion. The State called the victim, C. Z., who testified that Defendant regularly fondled her breasts and once forcibly removed her pants and “messed with between my legs.” The State also called the victim’s younger sister, A. Z., who witnessed some instances of Defendant’s improper conduct.
Over defense counsel’s objection, the trial court ordered Defendant to testify at the sentencing hearing, reasoning that Defendant had waived his privilege against [ i>self-incrimination when he entered his guilty plea. The trial court then questioned Defendant as follows:
Q: I asked you [were] the allegations true. I know you pled guilty. That’s a matter of court record. But is that what you did? Did you act indecently with a juvenile identified as C. Z .... on April 13,1998?
A: Yes, sir.
[[Image here]]
Q: On count one. You were also alleged that between the dates of September 7, 1998 and September 11, 1998, that you committed indecent behavior with the juvenile C.Z. during that period of time. Did you do that or not?
A: Yes, sir.
[[Image here]]
Q: It’s also alleged that on November 27, 1998, in count three, to which you have pled guilty, that you engaged in *479 indecent behavior with [C.Z.] at that time. Did you do that or not?
A: Yes, sir.
Q: Yes, you did; is that right?
A: Yes, sir.
[[Image here]]
Q: Also, on December 21,1998, you are charged with having indecently behaved with [C.Z.] on that occasion, and which you previously pled guilty. But did you, in fact, do that?
A: Yes, sir.
THE COURT:
Apparently-Part of the reason I’m doing this is because this girl’s mother has not believed that Mr. Heaton acted in an indecent behavior with the child. I don’t know whether she’ll believe it now with him sitting here saying that, yes, he did it. But I believe this little girl is | ^entitled to that much vindication in her mother’s eyes. And if the mother doesn’t believe it, this Court cannot do anything else to show it.
In imposing sentence, the trial court later remarked: “When the Court gave you the opportunity to testify at your sentencing hearing, you limited your testimony to a terse admission of the occurrence of the incidents. You did not in any way deny the accuracy of the allegations as they were reported by C. Z. and A. Z.”
Opinion
In Mitchell v. United States, 526 U.S. 314, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999) the Supreme Court recently held that a defendant who enters a guilty plea does not waive his Fifth Amendment privilege against self-incrimination at sentencing. In Mitchell, the defendant pleaded guilty to federal charges of conspiracy to distribute cocaine, with the proviso that the quantity of drugs — upon which her sentence would be based — would be determined at sentencing. When the defendant failed to testify at the sentencing hearing, the trial court made an adverse inference from her silence, stating “I held it against you that you didn’t come forward today and tell me that you really only did this a couple of times.... I’m taking the position that you should come forward and explain your side of this issue.” Id. at 1311. The trial court then imposed a sentence based upon its finding that the defendant had been a drug courier on a regular basis, and the court of appeal affirmed.
. In finding that the trial and appellate courts erred, the Supreme Court reaffirmed its holding in Estelle v. Smith, 451 U.S. 454, 101 S.Ct. 1866, 68 L.Ed.2d 359 (1981) that incrimination is not complete upon an adjudication of guilt. Acknowledging that “where there can be no further incrimination, there is no basis for the assertion of the privilege,” the Supreme Court nonetheless concluded “that principle applies to cases | ,|in which the sentence has been fixed and the judgment of conviction has become final.” Mitchell, 119 S.Ct. at 1314 (emphasis added). As the Supreme Court explained: “Where the sentence has not yet been imposed a defendant may have a legitimate fear of adverse consequences from further testimony.” Id. Additionally, the Supreme Court applied the long-standing rule of Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965) that a court may not draw an adverse inference from a criminal defendant’s silence. Thus, “[b]y holding petitioner’s silence against her in determining the facts of the offense at the sentencing hearing, the District Court imposed an impermissible burden on the exercise of the constitutional right against compelled self-inerimi-nation.” Mitchell, 119 S.Ct. at 1316.
The Supreme Court also rejected arguments that either the defendant’s statements at the plea colloquy or the guilty plea itself functioned as a waiver of her right to remain silent at sentencing. The Supreme Court recognized that had the defendant pleaded not guilty and taken the stand at a trial, she would have been subject to cross-examination. However, the Supreme Court refused to equate the de *480 fendant’s sworn statements at her plea colloquy with trial testimony:
The concerns which justify the cross-examination when the defendant testifies are absent at a plea colloquy, however. The purpose of a plea colloquy is to protect the defendant from an unintelligent or involuntary plea. The Government would turn this constitutional shield into a prosecutorial sword by having the defendant relinquish all rights against compelled self-incrimination upon entry of a guilty plea, including the right to remain silent at sentencing.
There is no convincing reason why the narrow inquiry at the plea colloquy should entail such an extensive waiver of the privilege. Unlike the defendant taking the stand, who “cannot reasonably claim that the Fifth Amendment gives him ... an immunity from cross-examination on the matters he has himself put in dispute,” [Brown v. United States, 356 U.S. 148] at 155-156, 78 S.Ct. 622, 2 L.Ed.2d 589, the defendant who pleads guilty puts nothing in dispute regarding the essentials of the offense. Rather, Isthe defendant takes those matters out of dispute, often by making a joint statement with the prosecution or confirming the prosecution’s version of the facts. Under these circumstances, there is little danger that the court will be misled by selective disclosure.
Id. at 1312.
Although the Supreme Court recognized that a defendant who pleads guilty waives any rights he would have had at trial, the Court further stated: “A waiver of a right to trial with its attendant privileges is not a waiver of the privileges which exist beyond the confines of the trial.” Id. at 1313.
In the present case, the State argues that Mitchell is distinguishable because the improper adverse inference in that case concerned an element of the crime whereas Defendant’s compelled testimony here amounted only to an admission of the charges to which he pleaded guilty. We cannot agree. Just as in Mitchell, the present defendant had not yet been sentenced when he was compelled to testify. He, too, faced “the possible impact that compelled testimony may have on [his] as yet undetermined sentence.” United States v. Kuku, 129 F.3d 1435, 1438 (11 Cir.1997), cert, denied, 524 U.S. 909, 118 S.Ct. 2071, 141 L.Ed.2d 147 (1998). Accordingly, we find clear error in the trial court’s ordering Defendant to take the stand. The State’s argument about the content of Defendant’s testimony, however, is more properly addressed in a harmless error analysis.
In State v. Johnson, 94-1379, p. 13 (La.11/27/95); 664 So.2d 94, 100, the Louisiana Supreme Court stated: “The history of Louisiana’s harmless error rule makes clear that there has been one common directive: appellate courts should not reverse convictions for errors unless the accused’s substantial rights have been violated.” The court distinguished trial errors from structural errors as follows:
| ¡/Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt. A structural error is one which affects the framework within which the trial proceeds.
Id. at 100-01. A trial error may be reviewed for harmless error, but a structural error may not. Arizona v. Fulminante, 499 U.S. 279, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).
In Richey v. Richey, 98-1195 (La.App. 3 Cir. 3/10/99); 733 So.2d 618, writ denied, 99-2122 (La.10/29/99); 749 So.2d 639, this court held that the trial court erred in compelling the defendant in a criminal contempt proceeding to testify after she had invoked her privilege against self-incrimination. Finding this to be a trial error, we then stated that the next step would be to “analyze the error in the light of the other *481 evidence admitted to determine if it was harmless beyond a reasonable doubt.” Id. at 622. Essentially, we disregarded the compelled testimony in determining if the other evidence was sufficient to prove the defendant guilty of contempt.
In the present case, Defendant faced a maximum sentence of seven years, with or without hard labor, for each count of indecent behavior with a juvenile, for a total sentencing exposure of twenty-eight years. La.R.S. 14:81(C). Defendant’s concurrent sentences of three and one-half years at hard labor on each count are within the statutory limits. Defendant received a significant benefit from his plea bargain in that he initially faced a maximum sentence of twenty years, with or without hard labor, for each count of aggravated incest. La.R.S. 14:78.1(D).
The trial court summarized the aggravating and mitigating factors considered in Defendant’s case as follows:
17Your indecent behavior with C.Z. occurred over a period of several months and during some periods, on a daily basis. Your indecent conduct consisted primarily of feeling or fondling the breasts of C.Z. On some occasions, it appears you forcefully held C.Z. down and silenced her by placing your hand over her mouth while you fondled her. Your fondling of C.Z. was for the most part on the outside of her clothing; but on one occasion, you threw C.Z. down on the bed and removed her pants and undergarments and fondled her in her pubic area. It was also reported by the girls in their interviews that you often slapped or hit C.Z. and A.Z., sometimes with a belt. The gills’ reports to their mother of your sexual abuse of C.Z. went unheeded.
At the sentencing hearing several witnesses testified to your overall good character and your service to the community, particularly through your work in the American Legion, and as an organizer of the Local Chapter of the Sons of the American Legion. There was also testimony that you have been employed as a civilian at Fort Polk for approximately the past twelve (12) years earning about $8,500.00 per month. Other testimony was received pertaining to the need of your aged parents to have you present to assist them. There was testimony by your former wife that you have been paying child support for the children born of your marriage to her and that your imprisonment would cause financial loss to her. All of these facts have been considered in applying the sentencing guidelines provided by Article 894.1 of the Code of Criminal Procedure ....
The Court has given very serious consideration to a probated sentence in this case, but the Court is now of the clear opinion that a probated sentence would deprecate the seriousness of the crime committed. Those who sexually abuse children should expect serious punishment by this Court.
Defendant’s compelled testimony was limited to the question of guilt, which was not at issue at the sentencing hearing. Defendant was not subject to cross-examination, and the trial court’s questions merely established the factual basis for the guilty plea. The trial court called Defendant to the stand to vindicate the victim in the eyes of her mother, not to elicit more information about the crimes. Under these circumstances, we find that the trial court’s questions did not seriously threaten Defendant’s right to remain silent at sentencing.
|sAlthough the trial court erred in ordering Defendant to take the stand, we find the error harmless in light of the trial court’s careful consideration of all aggravating and mitigating factors. Further, Defendant’s sentences do not shock our sense of justice and they are not needless impositions of pain and suffering. Defendant sexually abused a child within his care. In addition to this abuse, the victim endured a year-long separation from her mother as *482 well as her mother’s condemnation of her as a liar.
Defendant’s assignments of error are without merit.
Errors Patent
In accordance with La.Code Crim.P. art. 920, this court reviews all appeals for errors patent on the face of the record. After reviewing the record, we have found none.
Decree
For the above reasons, Defendant’s convictions and sentences are affirmed.
AFFIRMED.