733 So.2d 618 (1999)
Shelly Marlene RICHEY, Relator,
v.
John Coogan RICHEY, Jr., Respondent.
No. 98-1195.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1999.
Rehearing Denied June 16, 1999.
*619 Richard Ducote, New Orleans, for Shelly Marlene Richey.
Henry R. Liles, Lake Charles, for John Coogan Richey, Jr.
Before DECUIR, SULLIVAN, and GREMILLION, Judges.
*620 GREMILLION, Judge.
The relator, Shelly Richey (now Carroll) was found in contempt of court for failing to sign a promissory note as mandated by a court order rendered in connection with the community property settlement with her ex-husband, John Richey, Jr. She was sentenced to serve three months in the parish jail and to pay $500.00 for John's attorney's fees. Execution of her sentence and the award of attorney's fees was stayed until "all appeals and writs are exhausted and the judgment is final." Shelly sought review in this court, and the following ruling was issued on September 17, 1998:

WRIT DENIED: Petitioner was entitled to invoke her right against selfincrimination at the criminal contempt proceeding and should not have been forced to testify; however, we find the error harmless as there was sufficient independent evidence presented to prove she violated the court's order. In re Milkovich, 493 So.2d 1186 (La.1986). Accordingly, Petitioner's application is denied.
On November 11, 1998, the Louisiana Supreme Court granted Shelly's writ application and remanded her case to this court for briefing, argument, and opinion, and stayed her sentence pending final resolution of the case by this court.

FACTS
The Richey's judgment of divorce was entered on November 16, 1993, and on September 25, 1995, John filed a petition seeking judicial partition of the community property. The hearing on the partition of property was held, written reasons were rendered partitioning the community property, and a judgment memorializing the partition was executed on July 11, 1997. In that judgment, Shelly was ordered to execute a promissory note payable to John in the amount of $4,259.40 payable at 8% interest per annum for three years in monthly installments of $133.47 with the first payment due thirty days from the signing of the judgment. Each remaining payment was due on the same day of each month thereafter until the note was paid in full.
On March 26, 1998, John filed a Rule for Contempt of Court seeking punishment of Shelly by fine and/or imprisonment for her failure to abide by the court order directing her to execute the promissory note. A hearing on the rule was held on June 18, 1998, and Shelly was found in contempt of court, ordered to serve three months in the parish jail, and to pay $500.00 for John's attorney's fees.

ASSIGNMENT OF ERROR
Shelly claims that the trial court erred by not allowing her to invoke her right against self-incrimination at the contempt proceedings. When Shelly was called to testify at the proceeding, she objected on the grounds that the proceeding was criminal in nature and sought to invoke her privilege against self-incrimination. The trial judge disagreed and required her to testify. Thus, she claims that her forced testimony was a violation of her constitutional rights, and she prays that the contempt adjudication be reversed and the sentence and award of attorney's fees vacated.

ANALYSIS
When the object of a proceeding is to punish a person for disobeying a court order, the proceeding is a criminal contempt proceeding. State in Interest of R.J.S., 493 So.2d 1199 (La.1986). John's Rule for Contempt of Court requested Shelly be punished by fine and/or imprisonment for her failure to abide by court orders to execute a promissory note. At the hearing, John made his intentions very clear, stating there was to be no attempt to coerce Shelly to sign the promissory note. The trial court stated that "the matter before it is purely a contempt proceeding, which is the action that is not one taken to enforce the court order to sign *621 but to cite someone for failing to do what this Court has ordered that person to do," and that "it does have the power to hold parties in contempt for wanton failure to obey the Court's orders." Further, the trial court indicated that the purpose for such proceedings as the instant case was to punish those who violated its orders. Finally, the action taken by the trial court, incarceration without a purge clause, clearly shows the proceeding was criminal. Therefore, since the purpose of the hearing was to solicit punishment for Shelly's failure to obey the orders of the trial court, the contempt proceeding was criminal in nature.
The Louisiana Supreme Court has stated:
This is a criminal contempt proceeding, since the object was to punish relator for contemptuous behavior in the presence of the court.[1]State v. Austin, 374 So.2d 1252 (La.1979); W. LeFave & A. Scott, Criminal Law § 7 (1972); R. Perkins, Criminal Law 532 (1969). Criminal contempt is a crime in every fundamental respect, and the defendant in a criminal contempt proceeding is entitled to the basic constitutional protections such as the presumption of innocence, the right to proof of guilt beyond a reasonable doubt, and the right not to be compelled to testify against himself. Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968).
In re Milkovich, 493 So.2d 1186 (La.1986); see also St. Germain v. Breaux, 97-402 (La.App. 3 Cir. 8/21/97); 702 So.2d 691. As was discussed in Milkovich, when contempt proceedings are criminal in nature, the defendant is entitled to basic constitutional protections applicable in criminal cases. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. "It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it." State v. Johnson, 432 So.2d 815, 816 (La.1983) quoting McCarthy v. Arndstein, 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). Therefore, the trial court erred when it compelled Shelly to testify and give evidence against herself.
We must next consider if the trial court error merits reversal or whether the error was harmless. In State v. Johnson, 94-1379, pp. 14-15 (La.11/27/95); 664 So.2d 94, 100-01, the supreme court discussed the difference between trial errors, which can be reviewed for harmless error, and structural errors:
Trial error occurs during the presentation of the case to the trier of fact and may be quantitatively assessed in the context of the other evidence to determine whether its admission at trial is harmless beyond a reasonable doubt. A structural error is one which affects the framework within which the trial proceeds. Id., 499 U.S. at 307-311, 111 S.Ct. at 1264-1265, 113 L.Ed.2d 302. Structural defects include the complete denial of counsel, see Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); adjudication by a biased judge, see Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); exclusion of members of defendant's race from a grand jury, see Vasquez v. Hillery, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the right to self-representation at trial, see McKaskle v. Wiggins, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); the right to a public trial, see Waller v. Georgia, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); and the right to a jury verdict of guilt beyond a reasonable doubt, see Sullivan v. Louisiana, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). *622 This Court has acknowledged the distinction between trial error and structural error. See State v. Cage, 583 So.2d 1125 (La.1991), cert. denied, 502 U.S. 874, 112 S.Ct. 211, 116 L.Ed.2d 170 (1991).
We find guidance in Johnson, 432 So.2d 815,[2] an earlier supreme court case involving a factual situation similar to the one in this case; however, the case did not involve the trial/structural error analysis. In Johnson, 432 So.2d 815, the defendant was required to testify at a habitual offender hearing about an earlier out-of-state conviction, without having been cautioned about his rights. At the hearing, the state presented no evidence to prove the defendant was the same person previously convicted. When informed that there was no further evidence to show the defendant was the same person, the trial judge called the defendant forward to testify. Defense counsel objected, arguing that the defendant was not required to furnish any proof, but the trial judge overruled the objection. It was the state's position that the Fifth Amendment was not applicable because the habitual offender proceeding was not a criminal procedure. In its opinion, the supreme court initially held that the right against self-incrimination does not depend on the nature of the proceedings. It then found the defendant's acknowledgment of his prior felony conviction was invalid as the trial court did not advise him of his right to remain silent. However, the court concluded:
Since there was no admissible evidence offered by the state to prove that Johnson was the same person convicted in Missouri, the state failed to prove the essential elements of R.S. 15:529.1, and the case must be remanded. Defendant is not protected by principles of double jeopardy from being tried again on the question of the prior felony conviction. State v. Hill, 340 So.2d 309 (La.1976); see State v. Stott, 395 So.2d 714 (La. 1981).
Id. at 817.
Since the court remanded the case and refused to apply the principles of double jeopardy, it appears the court concluded that the error committed by the lower court was a trial error, that is, it could be quantitatively assessed in the context of other evidence to determine whether its admission at trial was harmless. We reach the same conclusion in the case at hand, and find that requiring Shelly to testify is trial error. We shall, therefore, analyze the error in the light of the other evidence admitted to determine if it was harmless beyond a reasonable doubt. Essentially, we shall disregard Shelly's testimony and determine if the other evidence submitted is sufficient to prove she violated the orders of the trial court.
In State in Interest of R.J.S., 493 So.2d at 1202-03, the supreme court stated:
This is a criminal contempt proceeding, since the object was to punish a person for disobeying an order issued by the court. Criminal contempt is a crime. The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal proceeding against conviction of a crime "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged". On appellate review of a criminal conviction, the reviewing court must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude that every element of the crime of which the defendant was convicted was proved beyond a reasonable doubt.
La.C.Cr.P.Art. 23(2) provides:
"A constructive contempt of court is any contempt other than a direct one.

*623 "A constructive contempt includes, but is not limited to any of the following acts:
* * * * * *
"(2) Willful disobedience of any lawful judgment, order, mandate, writ, or process of court."
Thus, an appellate court reviewing this conviction of criminal contempt under Article 23(2) must determine that the evidence, viewed in the light most favorable to the prosecution, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant willfully disobeyed a lawful order of the court. After reviewing this record, we conclude that the evidence of willful disobedience was insufficient.
Willful disobedience of a court order requires a consciousness of the duty to obey the order and an intent to disregard that duty. The purpose of charging and convicting a defendant for criminal contempt is vindication of the public interest by punishment of contemptuous conduct. Therefore, in order to constitute willful disobedience necessary for criminal contempt, the act or refusal to act must be done with an intent to defy the authority of the court.
(Citations and footnote omitted). Thus, we must determine whether in the light most favorable to John, he proved beyond a reasonable doubt that Shelly was conscious of the duty to obey the court order, and that she willfully and intentionally defied that order. Besides Shelly, John was the only other witness to testify at the hearing. In its entirety, John's testimony produced the following: that since the July 11, 1997 judgment of partition he had not received an executed promissory note from Shelly pursuant to that court order; that he had not received any payments on the promissory note; and that Shelly said she was not making payments because she thought the court order was invalid.[3]
Based on that record, a rational trier of fact could not conclude that Shelly wilfully refused to obey or consciously intended to defy the court order. Without Shelly's testimony, the evidence, even when viewed in the light most favorable to John, does not prove every element of contempt beyond a reasonable doubt, nor does it prove beyond a reasonable doubt that she received notice of the judgment and the requirement that she sign the note. We recognize that John did not receive the promissory note and that a signed promissory note in Shelly's hands is of no value to John. A promissory note is evidence of a debt, and allows the holder certain benefits such as interest and the right to enforce collection of that debt through judicial process. Without the promissory note, such enforcement is not possible. Certainly, the promissory note, once signed, should have been delivered to John. Shelly may not independently make her own determination that a court order is invalid. We note that if "a person to whom a court directs an order believes that order is incorrect the remedy is to apply for review, but absent a stay, to comply promptly with the order pending review. Persons who make private determinations of the law and refuse to obey an order risk criminal contempt even if the order is ultimately ruled incorrect." State v. Meyer, 375 So.2d 372, 373 (La.1979), cited with approval by this court in State v. Arceneaux, 97-197 (La.App. 3 Cir. 6/4/97); 695 So.2d 1148, writ denied, 97-1807 (La.1/9/98); 705 So.2d 1096. However, without the admissions made by Shelly in her forced testimony and evidence submitted therein, the record does not discount *624 every reasonable hypothesis that the note was not signed. It is understandable that the fact finder would find Shelly guilty of contempt of court when her testimony is evaluated along with John's. (She admitted she did not sign the note.) Had she not testified, some, if not all, of the evidence solicited in her testimony may have been introduced by other means, and with that evidence a finding of guilt may have been supported by the record. Therefore, while we find merit in Shelly's assignment of error, in the interest of justice, we remand the matter for further proceedings consistent with the opinion.

CONCLUSION
We find that Shelly was entitled to invoke her right against self-incrimination at the criminal contempt proceeding and should not have been forced to testify. After subjecting the error of the trial court to a harmless error review, we conclude that Shelly could not have been found guilty of contempt once the forced testimony and evidence admitted therein are excluded. Accordingly, we reverse the trial court's ruling, vacate Shelly's sentence, and remand the matter to the trial court for further proceedings. All costs of this appeal are taxed to John.
REVERSED, SENTENCE VACATED, AND REMANDED.
NOTES
[1] If the aim of the court is to force the person into compliance with the order, the contempt is civil. See Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966). Here, the contempt was clearly criminal, because the object was obviously punitive rather than remedial. See Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911).
[2] In State v. Johnson, 457 So.2d 1251 (La. App. 1 Cir.1984), the defendant's case was remanded for resentencing. In State v. Johnson, 471 So.2d 1041 (La.App. 1 Cir.1985), the defendant appealed the sentence he received.
[3] While questioning John, Shelly proffered a document to show that John fraudulently represented to the court that the home in which he and his wife were living was separate property when, in fact, he had conveyed a one-half interest to her via an act of donation. The trial court ruled that the document was irrelevant to the contempt proceeding and he limited counsel's proffer to the document only. We note that this act of donation may be the reason Shelly felt the Judgment of Partition was invalid.