JjCLARENCE E. McMANUS, Judge.
In this matter, because a finding of contempt was made in the absence of the constitutional protections applicable in such proceedings, we reverse the finding of contempt made against Appellant, William Giangrosso, and vacate the sentence imposed therefor.
STATEMENT OF THE CASE WITH FACTS
The suit in this matter was instituted on April 15, 1997, with a Petition for Divorce; the parties to the divorce are Desiree Martin Robards and Richard Lamar Robards. However, the merits of the domestic action are not at issue here, nor was either of the parties to that action directly involved in the contempt proceedings under review. Instead, the contempt arose during the judge’s hearing into why the Defendant in the suit, Richard Robards, had possibly been unlawfully released from jail.[1] The Defendant in the rule for contempt, William Giangrosso, had been scheduled to testify as a witness in that hearing, as were several other employees of the Jefferson Parish Sheriffs Office, all of whom work at the Jefferson Parish Correctional Center. The acts for which Giangrosso was held in contempt arose during the hearing.
The hearing occurred on April 20, 2001. At the beginning of the hearing, the trial judge ordered the witnesses out of the courtroom during the proceedings, and warned them to “not .... discuss [the] case with anyone at anytime.” Before Giangrosso had testified, as he was waiting in the courthouse hall,'he spoke with another of the officers, Dawn St. Lucia, as she was leaving the courthouse after she had testified.
When the trial judge became aware that this conversation had taken place, she ordered St. Lucia to return to the courtroom. St. Lucia was questioned regarding her | ^conversation with Giangrosso; she responded that Giangrosso had spoken with her regarding her testimony.
The trial judge next called Giangrosso to the stand, and after he had been sworn in, questioned him about the substance of his conversation with St. Lucia. In addition, the judge asked Giangrosso whether he had “[heard] me order that all of the witnesses be sequestered and that [he] not *1113 discuss anything about this case with anybody.” To this question, Giangrosso answered, “Yes, ma’am.”
The trial judge then stated that she would hold a contempt hearing “with Captain Giangrosso,” and set the hearing for April 23, 2001. The hearing on Richard Robards’s release from jail was continued without date.
The April 23 date was not kept, however, and on June 15, 2001, the trial judge issued a Rule for Contempt that included orders for service on Giangrosso.
The contempt hearing was held June 21, 2001.[2] Dawn St. Lucia testified at the hearing, as did several witnesses to her April 20 conversation with Giangrosso. Giangrosso himself testified that he had not intended to disobey the trial judge’s sequestration order by speaking with St. Lucia. In addition, he offered evidence in mitigation of any possible punishment. At the conclusion of the hearing, the trial judge found Giangrosso in constructive contempt of her April 20 order and sentenced him to serve three months in Orleans Parish Prison.
On July 28, 2001, the trial judge denied Giangrosso’s motion for suspensive appeal, denying a stay of sentence and granting only a devolutive appeal. However, on June 28, 2001, under docket No. 01-718, a panel of this court granted a suspensive appeal and suspended execution of the sentence conditioned on Giangrosso’s furnishing an appeal bond.
LAW AND ARGUMENT
As his first assignment of error, Appellant Giangrosso asserts that the trial judge “erred in denying him his constitutionally protected right to due process when, on April 20, 2001, the trial judge ordered him to answer questions in open court, under oath, and Lon the record regarding his alleged contemptuous behavior.” We agree with this assertion.
A contempt proceeding incidental to a civil action is civil in nature, if the purpose is to force compliance with a court order, but it is criminal if the trial judge’s primary purpose in imposing the sentence is to punish disobedience of a court order. Parish of Jefferson v. Lafrieniere Park Foundation, 98-345, at 8 (La.App. 5 Cir. 9/15/98), 720 So.2d 359, 364. If the sentence for contempt is a determinate one, then the punishment is criminal in nature, and it may not be imposed unless federal constitutional protections are applied in the contempt proceeding. Hicks v. Feiock, 485 U.S. 624, 637, 108 S.Ct. 1423, 1433, 99 L.Ed.2d 721, 735 (1988).
In such cases, federal due process requires state courts to provide defendants with reasonable notice of the charges against them and an opportunity to be heard in their defense; the right to be heard includes, as a minimum, a right to examine the witnesses against them, to offer testimony, and to be represented by counsel. In Re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 508, 92 L.Ed. 682, 694 (1948); Brunet v. Magnolia Quaterboats, Inc., 97-187, at 10 (La.App. 5 Cir. 3/11/98), 711 So.2d 308, 313. Or, put another way, the fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. Crowe v. Smith, 151 F.3d 217, 231 (5th Cir.1998) (citing Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).
There is no question that the contempt proceedings in this matter were of a criminal nature. Appellant Giangrosso, there *1114 fore, was entitled to the above protections. They were denied him.
Louisiana Code of Civil Procedure does set out a procedure that, if followed, will afford the defendant-in-contempt these protections. LSA-C.C.P. art. 225 provides, in pertinent part, that
Except as otherwise provided by law, a person charged with committing a constructive contempt of court may be found guilty thereof and punished therefore only after the trial by the judge of a rule against him to show cause why he should not be adjudged guilty of contempt and punished accordingly. [4The rule to show cause may issue on the court’s own motion .... and shall state the facts alleged to constitute the contempt. ... [A] certified copy of the motion, and of the rule to show cause, shall be served upon the person charged with contempt in the same manner as a subpoena at least forty-eight hours before the time assigned for the trial of the rule.[3]
The difficulty with the finding of contempt in this matter is not so much that this procedure was not complied with; the problem here is that even a proper hearing cannot operate to legitimize findings already improperly made. Though the judge in this matter did follow the above procedures, by the time a proper hearing was conducted, the hearing was meaningless. Because the trial judge had already elicited an admission from Giang-rosso, the finding made after the second hearing was a foregone conclusion. And the original statements had been made in violation of Giangrosso’s right to present his defense, and surely, his right to counsel. The second hearing in this matter, though it was noticed and conducted according to established procedure, clearly did not afford Giangrosso the opportunity to be heard “in a meaningful time and in a meaningful manner.” Crowe, supra.
As his remaining assignments of error, Appellant Giangrosso cites errors regarding the length of, and conditions imposed on, his sentence. However, having reversed the finding of contempt, we need not address these errors.
Therefore, for the above reasons, we reverse the adjudication of contempt entered against Appellant William Giangros-so in this matter' and vacate the sentence imposed therefor.
REVERSED.

. Though the record we have before us is somewhat unclear, Richard was jailed as a result of a contempt incidental to the merits of the suit. This fact is simply a coincidence and has no bearing on the contempt finding at issue.

. During this hearing, the trial judge also questioned some witnesses regarding the original subject of the April 20 hearing — Richard Robards's release from jail.

. Because Giangrosso’s acts did not occur in the "immediate view and presence of the court,” his actions constituted constructive, not direct, contempt. LSA-C.C.P. articles 222 and 224.