LEON A. CANNIZZARO, JR., Judge.
This case involves an appeal from the trial court’s dismissal of a motion to hold certain parties in contempt for violating a consent judgment previously rendered by the trial court., The plaintiff is appealing, the dismissal of the motion.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
At a tax sale, Jackson Avenue Foundation, Inc. (the “Foundation”), a non-profit organization chartered to protect the architectural heritage of Jackson Avenue in New Orleans, Louisiana, acquired a lot and the improvements located at 938M2 Jackson Avenue. The Foundation acquired the property for the purpose of selling it to a third party who would restore the property in furtherance of the Foundation’s mission, the preservation of historic Jackson Avenue buildings.
The Foundation decided to allow the property to be sold to Betty Jefferson, who owned the house and lot next door to the property, or her nominee. One of the potential purchasers of the property found by Ms. Jefferson admitted that he wanted to acquire the property to build a parking lot. This use of the property, which would have entailed the demolition of the improvements on the lot, was unacceptable to the Foundation, and it refused to sell the property to that purchaser.
Ms. Jefferson then nominated Eric Las-sair, Telejacks and Things, Inc., and Angela Coleman as potential purchasers of the property. Mr. Lassair, on behalf of Tele-jacks, Ms. Coleman, and himself, represented to the Foundation that he was a contractor and that they wanted to purchase the property for the purpose of renovating it. A contractor’s lien affected the property as a result of an aborted renovation project. Mr. Lassair, however, agreed on behalf of Telejacks, Ms. Coleman, and himself that they would defend the property against the lien.
In consideration of Mr. Lassair’s representations, the Foundation sold the property to him, Telejacks, and Ms. Coleman for a reduced purchase price. A check was given to the Foundation for the purchase price less a.small deposit that had already been paid, but the check was returned by the bank on which it was drawn, because there were insufficient funds to pay the check.[1]
The Foundation then filed suit against Mr. Lassair, Telejacks, and Ms. Coleman for damages and for an injunction prohibiting the demolition of the improvements on *928 the property. The trial court entered a judgment enjoining Mr. Lassair, Telejacks, Ms. Coleman, and anyone acting on their behalf from damaging, demolishing, and removing materials from the property. The trial court further ordered that the property be secured from damage, demolition, theft, and vandalism. Subsequently, the trial court held Mr. Lassair and Tele-jacks in contempt of court for violating the preliminary judgment by failing to prevent vandalism and the theft of architecturally important items from the property.[2]
After Mr. Lassair and Telejacks were found to be in contempt of court, the trial court learned at a subsequent hearing that the property had been sold to Archie Jefferson, who had transferred the property to First Rate Investment Services, L.L.C., a limited liability company of which Mr. Jefferson was the general manager. The trial court then ordered that First Rate be made a party to the proceedings.
Ultimately, Mr. Lassair, Telejacks, Ms. Coleman, First Rate, and Mr. Jefferson entered into certain stipulations that formed the basis of a consent judgment rendered by the trial court. The consent judgment stated that the parties to the stipulations were permanently enjoined from “undertaking any action or failing to take any action in violation of the terms and provisions stated in the Stipulations.” The petition originally filed by the Foundation was dismissed by the consent judgment.
Among the stipulations to which the parties agreed in the consent judgment was a stipulation that no later than a stated date, First Rate would begin renovating the property in accordance with a proposal approved by, or pursuant to the directions of, the Historic Commission.[3] The parties agreed that the restoration would retain the original facade and use the original materials to the extent feasible so that the property’s historic nature could be maintained.
The stipulations in the consent judgment further provided that the terms and provisions of the stipulations were binding on the heirs, successors, assigns, and transferees of the Foundation, Mr. Lassair, Ms. Coleman, Telejacks, and First Rate and that all of the parties were permanently enjoined from taking or failing to take any action that would violate the stipulations. Additionally, Mr. Jefferson personally guaranteed the performance of all of the obligations of First Rate under the stipulations.
After the consent judgment was rendered, the improvements located on the property were demolished. The Foundation then filed an amended petition against Mr. Lassair, Telejacks, Ms. Coleman, Mr. Jefferson, Ms. Jefferson, and First Rate. In the amended petition, the Foundation sought (1) rescission of the sale of the property plus damages in an amount that would permit the property to be restored in accordance with the consent judgment, (2) damages, including attorneys’ fees, suffered by the Foundation as a result of fraud allegedly committed by the defendants named in the amended petition in demolishing the building on the property rather than restoring it, and (3) enforcement of the consent judgment.
*929 The Foundation subsequently filed a motion to hold the defendants named in the amended petition in contempt of court and for sanctions and damages for the willful violation of the consent judgment. Finally, the Foundation filed a motion to compel discovery.
After a hearing on the Foundation’s motions was held, the trial court denied the motion for contempt and dismissed the remaining claims urged by the Foundation. The trial court also denied as moot the Foundation’s motion to compel discovery.
The trial court judge gave the following reasons for her judgment: (1) she took judicial notice of a lawsuit that had been filed by the City of New Orleans against First Rate for its violation of historic district ordinances that required prior approval from the Historic Commission for the demolition of the building on the property; (2) the City was seeking the same relief as the Foundation was in the instant suit; (3) the Foundation, as a former owner of the property, failed to show a real or actual interest in the property; and (4) the Foundation did not claim to act in any representative capacity with respect to the Historic Commission.
DISCUSSION
Violation of the Injunction
In this case the trial court rendered a consent judgment that “permanently enjoined [the Foundation, Mr. Lassair, Tele-jacks, Ms. Coleman, First Rate, and Mr. Jefferson] from undertaking any action or failing to undertaking [sic] any action in violation of the terms and provisions stated in the Stipulations.” The Stipulations included the following provisions:
19.
No later than March 1, 2001, First Rate shall commence renovations of the Property either in accordance with an HDLC [Historic Commission] approved proposal or in accordance with HDLC’s directions for the renovations. The restoration will ^maintain its facade and use the original materials to the extent feasible, thereby maintaining the historic nature of the Property. Said renovations shall proceed in accordance with plans and specifications and a schedule approved by the HDLC and the City of New Orleans, Department of Safety and Permits. First Rate, at its sole cost and expense shall provide for the maintenance of a suitable security fence and other structures until the construction for the restoration....
[[Image here]]
24.
That Mr. Archie L. Jefferson intervenes herein and does hereby personally guarantee the performance of all obligations undertaken by First Rate.
It is undisputed that First Rate did not begin the restoration of the building located on the property no later than the stipulated deadline. At the hearing on the motion for contempt brought by the Foundation, Mr. Jefferson justified the violation of the injunction to begin restoration by the deadline in the following testimony:
Essentially, Your Honor, I was going to — at the time when I purchased this property, I also had an agreement to purchase the property next door.[4] Because my sister could not find suitable housing in her district, she had to remain in her property. And my wife and I had to purchase another piece of property.
*930 So, we were incurring a lot of expenses of renovation on both places. And we just did not have it to start at that time.
And before we could do anything else, it was damaged. (Footnote added.)
Eldon Huner, Jr., the senior building inspector for the Historic Commission, was qualified by the trial court as an expert in “construction renovation and condition of the building.” Mr. Huner testified that he was familiar with the condition of the building on the property at the time that the building was demolished. He testified that the building was structurally sound and was not in danger of falling down. Mr. Huner further testified that the building was demolished the day after a tropical storm had affected the New Orleans area, but he identified photographs of the building that were taken after the storm that failed to show that the building was leaning on the property next door. Mr. Huner also testified that his investigation revealed that the backhoe used to demolish the building on the property was leased prior to the hurricane.
At the contempt hearing, several newspaper articles were admitted into evidence. In one article Mr. Jefferson was quoted as saying that winds associated with the tropical storm caused part of the building on the property to fall on his sister’s house next door and that he, therefore, hired a crew to “pull it off.” He was also quoted as saying that the crew’s efforts caused the remainder of the building to collapse. Therefore, “[w]hen it fell over and started to do damage to other properties, there was nothing left to do.” Another newspaper article stated that Mr. Jefferson “said ... that he bought the property in hopes of tearing it down, buying his sister’s home and having a larger plot of land.” Mr. Jefferson did not dispute the newspaper articles that were entered into evidence.
Because the trial court dismissed the Foundation’s contempt motion and its action for contempt, she did not determine whether there were any violations of the permanent injunction that had been issued by the trial court in the consent judgment. The record shows that evidence was presented to support a finding that First Rate violated the injunction when it failed to begin renovating the property by the agreed upon date and a finding that Mr. Jefferson violated the injunction when he permitted the building on the property to be demolished. Nevertheless, the trial court made no findings of fact on this issue.
Contempt of Court
La. C.C.P. art. 221 provides that contempt of court consists of “any act or omission tending to obstruct or interfere with the orderly administration of justice, or to impair the dignity of the court or respect for its authority.” La. C.C.P. art. 224 provides that “[w]ilful disobedience of any lawful judgment, order, mandate, writ, or process of the court” constitutes constructive contempt of court.[5] La. C.C.P. art. 3611 provides that “[disobedience of or resistance to a ... final injunction is punishable as a contempt of court.” Article 3611 further states that the court may “cause to be undone or destroyed whatever may be done in violation of an injunction, and the person aggrieved thereby may recover the damages sustained as a result of the violation.”
La. C.C.P. art. 225 permits a contempt rule to be tried against a person charged with constructive contempt to be on either *931 the court’s own motion or on the motion of a party to the proceeding. La. C.C.P. art. 227 provides that a court may impose punishment on a person judged- to be guilty of contempt as provided in La. R.S. 13:4611. That statute states in relevant part as follows:
Except as otherwise provided for by law:
(l)The supreme court, the courts of appeal, the district courts, family courts, juvenile courts, and the city courts may punish a person adjudged guilty of a contempt of court therein, as follows:
[[Image here]]
(b) For disobeying or resisting a lawful restraining order, or preliminary or permanent injunction, by a fine of not more than one thousand dollars, or by imprisonment for not more than twelve months, or both....
In City of Lake Charles v. Parkerson, 347 So.2d 494, the Louisiana Supreme Court discussed contempt of court as follows:
The correctness of a court order or ruling is not contested by deciding to willfully disobey it, without suffering the consequence of that disobedience. Absent a showing of transparent invalidity or patent frivolity surrounding the order, it must be obeyed until stayed or reversed by orderly review.
.... It is only the orders of judicial authorities which must be tested in the courts before deliberate transgression can be excused on an eventual determination that the order was invalid.
[[Image here]]
... .While it should be sparingly used, the power of courts to punish for contempt is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the judicial process.
347 So.2d at 496-497 (citations omitted)(emphasis added).
In HCNO Services, Inc. v. Secure Computing Systems, Inc., 96-1693 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, this Court stated that “[t]o find a person guilty of constructive contempt, it is necessary to find that he or she violated the order of court intentionally, knowingly, and purposely, without justification.” 693 So.2d at 845. Because the trial court judge found that the Foundation had no standing to raise the contempt issue in this case, she never reached the issue of whether any violation of the injunction contained in the consent judgment met the criterion set forth in the HCNO Services, case.
Remand to the Trial Court
The Foundation was a party to the proceeding in which the permanent injunction was issued. Therefore, as such, under La. C.C.P. art. 225, the Foundation had standing to move the court to consider whether the parties to the consent judgment were guilty of contempt. We, therefore, reverse the trial court judgment, and we remand this case to the trial court.
On remand, the trial court must make factual findings[6] to determine whether or not the permanent injunction was violated. If there was a violation of the injunction, the trial court must determine whether it was committed “intentionally, knowingly, and purposely, without justification.” If the violation was so committed, the trial court must find the offending parties to be in contempt of court and administer appropriate sanctions.
*932 Additionally, on remand, because we find that the Foundation had standing to move the court to determine whether any parties to the permanent injunction were in contempt of court, the trial court must also hear the Foundation’s discovery motions. The information that might be obtained by the Foundation pursuant to discovery might be helpful to the trial court in making its factual determinations on remand.
CONCLUSION
The judgment of the trial court is reversed. This matter is remanded to the trial court for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.

. The record reflects that the purchase price was ultimately paid.

. Ms. Coleman was dismissed from the motion for contempt, because there was no evidence that she had been served with the motion.

. The formal name of the Historic Commission is the Historic District Landmarks Commission, which is the regulatory agency for local historic districts in New Orleans that are outside of that part of the city known as the Vieux Carre or French Quarter.

. The property next door was owned by Ms. Jefferson, who is Mr. Jefferson's sister.

. La. C.C.P. art. 224 provides that “[a] constructive contempt of court is any contempt other than a direct one.” La. C.C.P. art. 222 provides that "[a] direct contempt of court is one committed in the immediate view and presence of the court....”

. Although the record before us clearly indicates that the injunction was violated twice, it is the province of the trial court to make factual findings, which we are then to review on appeal. Therefore, the trial court should make the initial findings of fact in this case.