926 So.2d 556 (2005)
Mike LONG, Plaintiff-Respondent
v.
Beverly HUTCHINS, Defendant-Respondent.
No. 40,548-CA.
Court of Appeal of Louisiana, Second Circuit.
December 14, 2005.
Opinion Granting Rehearing April 26, 2006.
*557 Roland V. McKneely, III, Shreveport, for Plaintiff-Respondent.
Charles W. Strickland, for Defendant-Respondent.
Tina Vicari Grant, Assistant Attorney General, for Intervenor-Applicant State of Louisiana and Charles C. Foti, Jr.
Tina V. Grant, Frances J. Pitman, Assistant Attorneys General, for Intervenor-Applicant, State of Louisiana and Charles C. Foti, Jr., on rehearing.
Before BROWN, STEWART and MOORE, JJ.
Opinion Granting Rehearing En Banc April 26, 2006.
MOORE, J.
Mike Long was found guilty of constructive contempt of court for violating an injunction in favor of his former paramour and business partner, Beverly Hutchins (now Beverly Drum), and Ms. Drum's daughter. The district court sentenced him to 120 days in jail with 100 days suspended, pursuant to La. R.S. 13:4611(1)(b). On Long's application, this court granted a stay order and a writ vacating the conviction and sentence. Subsequently, the State of Louisiana filed an application for rehearing which this court granted, vacating its prior writ ruling and ordering an appeal. For the reasons expressed, we clarify our previous order, vacate the conviction and sentence, and remand.
The matter arose in the course of litigation by Long to obtain corporate documents and personal property that Ms. Drum allegedly would not return to him. On August 6, 2004, by the agreement of the parties, the court rendered judgment enjoining Long from directly or indirectly contacting Ms. Drum or her daughter. On February 11, 2005, Ms. Drum filed the instant rule for contempt, alleging that she had received some 12 e-mails, several cards, a book and a flower arrangement from Long in violation of the injunction.
Ms. Drum's rule was heard on May 16, 2005. Ms. Drum called Long to testify, but claiming that the matter was criminal in nature, Long asserted his right against self-incrimination. Ms. Drum and her *558 daughter then testified and she rested her case. Long orally moved for judgment of acquittal; the district court denied this and immediately sentenced Long to 120 days in jail, with 100 suspended. Long objected that he had not been permitted to put on his case. The court called the objection an abuse of process and "nonsense": "You had an opportunity to put your witness on. Your witness was called, he took the Fifth Amendment, and you didn't tell me that he wanted to untake the Fifth Amendment." Long took the instant writ, which this court later converted to an appeal.
Long correctly argued, both at the contempt rule and in briefs to this court, that this matter is one of criminal contempt. When the object of a proceeding is to punish a person for disobeying a court order, the proceeding is for criminal contempt. State in Int. of R.J.S., 493 So.2d 1199 (La.1986). As we explained in Johnson & Placke v. Norris, 38,300 (La.App. 2 Cir. 5/12/04), 874 So.2d 340, writ denied, XXXX-XXXX (La.9/24/04), 882 So.2d 1137:
[A] fixed sentence of imprisonment is punitive and criminal if it is imposed retrospectively for a completed act of disobedience such that the contemnor cannot avoid or abbreviate the confinement through later compliance-the defendant is furnished no key and he cannot shorten his term by promising not to repeat the offense.
Criminal penalties may not be imposed on someone who has not been afforded the protections that the Constitution requires of such criminal proceedings. Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988). Criminal contempt is a crime in every fundamental respect, and the defendant in a criminal contempt proceeding is entitled to basic constitutional protections. Richey v. Richey, 98-1195 (La.App. 3 Cir. 3/10/99), 733 So.2d 618, writ denied, 99-2122 (La.10/29/99), 749 So.2d 639. In Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the court delineated these safeguards:
Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. (Internal citations omitted.)
The courts of this state have frequently reaffirmed this standard. State v. Austin, 374 So.2d 1252 (La.1979); Richey v. Richey, supra; Robards v. Robards, 01-1100 (La.App. 5 Cir. 1/29/02), 807 So.2d 1111.
A simple review of this record shows that the district court did not permit Long to present a defense. The judgment of contempt is therefore invalid. Richey v. Richey, supra; Robards v. Robards, supra; State v. Anderson, XXXX-XXXX (La. App. 4 Cir. 3/9/05), 899 So.2d 93; Fellman v. Mercantile Fire & Marine Ins. Co., 116 La. 733, 41 So. 53 (1906) ("[W]here the judge has no personal knowledge of the matter imputed as contempt, he should not pass sentence without having afforded the party a full opportunity to present his defense."). It is of no moment that Long previously invoked his right against self-incrimination. If he chooses to take the stand, he is subject to cross-examination over matters addressed on direct. State v. Rhodes, 337 So.2d 207 (La.1976).
Moreover, the maximum penalty for contempt is 12 months, La. R.S. 13:4611(1)(b); *559 this entitles the accused to trial by a jury of six members, all of whom must concur to render a verdict, La. Const. art. 1, § 17; La. C. Cr. P. art. 779 A. The record shows that Long was never advised of this right. Finally, the district court remarked that the evidence "shows" that Long contacted Ms. Drum and her daughter after the injunction. This does not reflect a finding that every element of the offense was proved beyond a reasonable doubt. Lutke v. Lutke, 33,001 (La.App. 2 Cir. 2/1/00), 750 So.2d 512. The judgment is invalid for these deficiencies as well.
In one of our previous writ rulings, this court stated that the defendant in a criminal contempt proceeding was entitled to the right of prosecution by an appropriate prosecuting authority. Because we find that Long was denied the right to present a defense, never advised of his right to a jury trial, and perhaps convicted on an inadequate burden of proof, we pretermit any consideration of the need for an "appropriate prosecuting authority." While La. Const. art. 5, § 26(B) appears to require a district attorney or his designated assistant "to have charge of every criminal prosecution," the Code of Civil Procedure provides that a rule to show cause for contempt may issue "on the court's own motion or on the motion of a party to the action or proceeding[.]" La. C.C.P. art. 225 A. Moreover, jurisprudence recognizes the courts' independent power to impose submission to their lawful mandates. International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). We are aware of no Louisiana case to hold that contempt cases must be prosecuted by the district attorney or his designated assistant. We therefore clarify our prior ruling to conform to the statement of due process rights enumerated in Bloom v. Illinois, supra, Richey v. Richey, supra, and this opinion.
PREVIOUS ORDER CLARIFIED; JUDGMENT REVERSED, AND CASE REMANDED.
STEWART, J., concurs and assigns written reasons.
BROWN, C.J., dissents with written reasons.
STEWART, J., concurring.
I concur in the majority's result, as I believe that Mr. Long's conviction must be reversed. Clearly, Mr. Long was deprived of basic constitutional rights in the criminal contempt proceeding. These deprivations were recognized in our prior writ order. The writ order also recognized that this criminal matter was not instituted by an appropriate prosecuting authority. The majority opinion avoids this issue.
Because the purpose of the contempt proceeding was to punish Mr. Long for disobeying a court order, the proceeding was a criminal contempt proceeding. Richey v. Richey, 98-1195 (La.App. 3d Cir.3/10/99), 733 So.2d 618, writ denied, 99-2122 (La.10/29/99), 749 So.2d 639. The proceeding was clearly penal in nature as Mr. Long was subject to incarceration with no purge clause. Id. Under La. R.S. 13:4611(1)(b), Mr. Long was subject to a "fine of not more than one thousand dollars, or by imprisonment for not more than twelve months, or both...." This penalty provision entitled Mr. Long to trial by a jury of six persons. See La. Const. art. I, § 17. Mr. Long was also entitled to all the constitutional protections due a defendant in a criminal trial. Richey, supra. These would include the presumption of innocence, the right to trial by jury or waiver of jury trial, the privilege against self-incrimination, the right to present a defense and testify in one's own defense, the right to proof of the elements of the *560 crime beyond a reasonable doubt, and the right to appeal any conviction.
Because Mr. Long was subject to a strictly criminal proceeding wherein he had the right to a jury trial, he was also entitled to have the matter prosecuted in the appropriate manner by the district attorney. As alluded to by the majority opinion, there is a glaring conflict between La. Const. art. 5, § 26(B), which provides that the district attorney "shall have charge of every criminal prosecution by the state in his district," and La. C.C.P. art. 225(A), which provides that a rule for contempt may issue "on the court's own motion or on motion of a party to the action or proceeding." The majority sidesteps this conflict, which was the reason for granting rehearing, by simply concluding that there is no jurisprudence holding that contempt cases "must be prosecuted by the district attorney or his designated assistant." However, we should not ignore this inherent constitutional defect created legislatively in order to make contempt proceedings more convenient for trial judges. Our job is not to provide convenience but to uphold the constitutions and laws of the United States and the State of Louisiana.
Because the district attorney is the party charged with conducting criminal prosecutions in this state, criminal contempt proceedings in which the penalty entitles the defendant to a trial by jury should be brought to the district attorney for prosecution. A criminal proceeding in which the defendant is entitled to a jury trial as well as all constitutional protections requires the constitutionally mandated prosecution by the district attorney and not trial by a private party before a trial judge.
Lastly, we granted rehearing after the attorney general responded to our original writ order claiming that it called into question the constitutionality of various state statutes. While the attorney general is entitled to notice under La. R.S. 13:4448 prior to adjudication of the constitutionality of a statute, nothing in our writ order gave the attorney general standing to intervene in this matter. The attorney general's intervention in this matter is perplexing in that as lead prosecutor for the state he would seemingly want to defend the constitutional duties of the district attorneys under La. Const. art. 5, § 26(B) to prosecute criminal matters in this state.
For these reasons, I respectfully concur.
BROWN, C.J., dissenting,
The reason this panel granted a rehearing was to address the question of whether a party in a civil lawsuit, in this case, Beverly Hutchins, could in fact initiate a constructive contempt action which had as its disposition a determinate/unconditional sentence imposed upon the offending party, Mike Long. Constructive contempt can result in either remedial action in which the penalty may be removed or purged by complying with the court's order; or punishment in which the penalty is unconditional, such as a fine and/or time in jail. The distinction between the two determines the standard of proof and as well as the procedure to be employed by the court.
The penalty imposed in this case was arguably both remedial and punitive. In punitive (criminal) contempt the offender is afforded more extensive due process rights. In Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), a case initiated by a litigant in a civil action for child support and one in which the punishment was unconditional, the U.S. Supreme Court found that the due process protections enumerated by Amendments V, VI, and XIV of the U.S. Constitution were applicable. These *561 rights include such fundamental safeguards as a speedy and public trial, by an impartial jury/judge; information as to the nature and cause of the accusation; ability to confront the witnesses against him; compulsory process for obtaining witnesses in his favor; the assistance of counsel for his defense; and, the privilege against self-incrimination. In Young v. United States, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) and, more recently in International Union, United Mine Workers v. Bagwell, 512 U.S. 821, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994), the U.S. Supreme Court held that due process in criminal contempt cases did not impose upon the states the requirement that charges be initiated by an independent state prosecutor.
Louisiana Code of Civil Procedure article 224(2) provides that constructive contempt includes the wilful disobedience of any lawful judgment, order, mandate, writ, or process of the court. Article 225 specifically provides Hutchins with standing to move the court to consider whether Long was guilty of contempt as a result of his failure to abide by the prior court order enjoining contact, direct or indirect, with Hutchins or her daughter. In Jackson Avenue Foundation v. Lassair, 03-1759 (La.App. 4th Cir.06/02/04), 876 So.2d 926, the court specifically upheld the right of a litigant to initiate and prove a punitive contempt charge for the violation of an injunction.
Counsel for Long argues that La. C.C.P. art. 225 is in conflict with the Louisiana Constitutional article giving the district attorney "charge of every criminal prosecution by the state in his district." (Emphasis added). Contempt resulting in punishment in civil cases has inherently civil purposes and, in fact, provides benefits to a party (or parties) to the action. These cases are litigated as an extension of the underlying civil action without any special prosecutorial powers such as the use of a grand jury to obtain records, procure testimony or grants of immunity. Rather, in civil cases the parties are on an equal footing.
Typically, litigants in small claims, domestic, and landlord-tenant cases obtain orders establishing their rights and file contempt motions for their enforcement. This is not what was envisioned by the term "criminal prosecutions by the state" in La. Const. Art. V, § 26(B). Criminal prosecutions are instituted by the district attorney while contempt proceedings are initiated by the allegedly aggrieved party. This is because the private party has obtained an order benefiting that party. The private party is aware of the violation and can bring it to the court's attention. In criminal prosecutions "by the state," the police first investigate, and then the state, through the district attorney, brings the matter to court. Because contempts are fundamentally matters of private interest in a way that criminal prosecutions by the state are not, there is no conflict between the statute and Louisiana's constitution.
The confusion is exacerbated in that the sanction imposed is typically determined by the evidence adduced at the hearing. Thus, the classification of the proceedings as remedial (civil) or punitive (criminal) is determined at the end of the hearing, rather than at the outset. This method of determining whether the action for contempt is civil or criminal is backwards as the focus is not on the conduct but the punishment imposed.
This is a matter of great importance for the trial courts and there is little jurisprudential guidance. This is the type of case which could qualify for en banc consideration.

*562 On Rehearing
STEWART, J.
After being found guilty of contempt in connection with a civil proceeding in which an injunction had been issued, Mike Long was sentenced under La. R.S. 13:4611(1)(b) to 120 days in jail with 100 days suspended. On Long's application for review, this court granted a stay order and writ vacating the conviction and sentence. We found that Long had been subject to a criminal contempt proceeding in which he was denied basic constitutional protections. Thereafter, we granted an application for rehearing filed by the State of Louisiana, which argued that our ruling called into question the constitutionality of certain contempt provisions in our law.[1] Our prior order was vacated, and an appeal was ordered.
The underlying facts are more thoroughly set forth in our original opinion, Long v. Hutchins, 40,548 (La.App. 2d Cir.12/14/05), 926 So.2d 556, 2005 WL 3417446, in which we determined that this matter was one of criminal contempt and that Long was not afforded basic constitutional protections. He was not allowed to put on a defense after initially invoking the right against self-incrimination, he was not advised of the right to a jury trial, and he was apparently not given the benefit of having every element of the crime proven beyond a reasonable doubt. Having found these deficiencies, we pretermitted discussion of whether Long was entitled to the right of prosecution by an appropriate prosecuting authority.[2]
The matter is now before the court in an en banc hearing to again consider the scope of rights to be afforded a party in a civil proceeding subject to contempt punishable under La. R.S. 13:4611(1)(b) and whether Long was deprived of such rights.
La. R.S. 13:4611(1)(b) provides a maximum penalty of imprisonment for not more than 12 months in jail and/or a fine of not more than $1,000 for disobeying or resisting a restraining order or an injunction. Long was subject to punishment under this provision for violating a restraining order prohibiting him from contacting either Beverly Hutchins (now Beverly Drum), with whom he had been involved in both a personal and business relationship, or her daughter. He was also given a determinate sentence of 120 days, 100 of which were suspended.
In Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), the United States Supreme Court recognized that "[c]riminal contempt is a crime in the ordinary sense; it is a violation of the law, a public wrong which is punishable by fine or imprisonment or both." Declaring there to be no substantial difference between serious contempts and other serious crimes, the Court held that serious contempts are crimes to which the constitutional right to a jury trial applies. Id. The Court further delineated the basic constitutional safeguards applicable in criminal contempt proceedings:

*563 Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed. (Internal citations omitted.)
This standard has been reaffirmed in our own courts. State v. Austin, 374 So.2d 1252 (La.1979); Richey v. Richey, 98-1195 (La.App. 3d Cir.3/10/99), 733 So.2d 618, writ denied, 99-2122 (La.10/29/99), 749 So.2d 639; Robards v. Robards, 01-1100 (La.App. 5th Cir.1/29/02), 807 So.2d 1111.
In differentiating those serious crimes requiring the right to trial by jury from those violations that are petty, the United States Supreme Court determined that the serious crimes are those carrying a sentence of more than six months and that the petty crimes are those carrying a sentence of six months or less. Duncan v. Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968); Baldwin v. New York, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); Codispoti v. Pennsylvania, 418 U.S. 506, 94 S.Ct. 2687, 41 L.Ed.2d 912 (1974). The potential maximum penalty involved is the factor which determines the right to a jury trial in any criminal proceeding, including criminal contempts. We are directed that where "the legislature has not expressed a judgment as to the seriousness of an offense by fixing a maximum penalty which may be imposed, we are to look to the penalty actually imposed as the best evidence of the seriousness of the offense." Bloom v. Illinois, supra.
Our legislature has imposed a maximum penalty under La. R.S. 13:4611(1)(b) of 12 months imprisonment. This categorizes the contempt punishable under that provision as a "serious crime" to which the right to trial by jury attaches. As we noted in our original opinion, the maximum penalty exposure entitles the accused to trial by a jury of six members, all of whom must concur to render a verdict. La. Const. art. I, § 17; La. C.Cr.P. art. 779(A).
In Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988), the Court explained that punishment in a civil contempt proceeding is for the benefit of the complainant and that imprisonment is remedial in nature if the sentence allows the contemnor to obtain release upon his compliance with the previously violated court order. On the other hand, punishment in a criminal contempt proceeding is imposed to vindicate the court's authority and is criminal in nature requiring constitutional protections when imposed for a definite period without conditions or a purge clause. See also Brown v. Taylor, 31,352 (La.App. 2d Cir.2/26/99), 728 So.2d 1058.
Long's sentence of 120 days with 100 days suspended was a definite sentence imposed without conditions or a purge clause. We note that in Feiock, supra, the court rejected the notion that a suspended sentence or probation is equivalent to either a conditional sentence or purge clause, noting that "if the sentence is a determinate one, then the punishment is criminal in nature, and it may not be imposed unless federal constitutional protections are applied in the contempt proceeding." Feiock, 108 S.Ct. at 1432.
Long's determinate sentence was clearly criminal in nature. Moreover, he was exposed to a maximum penalty of 12 months *564 imprisonment thereby meeting the threshold for jury trial eligibility as a constitutional right. The sentence was imposed without Long having been advised of, or provided with, the constitutional safeguards discussed in this opinion and in our original opinion. Due to deficiencies in due process in the lower court proceedings, we reverse the judgment finding Long guilty of contempt and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
PEATROSS, J., concurs.
BROWN, C.J., concurs with written reasons.
GASKINS, J., concurs for the reasons assigned by J. BROWN.
CARAWAY, J., concurs for the reasons assigned by J. BROWN.
LOLLEY, J., concurs for the reasons assigned by J. BROWN.
BROWN, C.J., concurring.
The entire court is in agreement that Long should have been allowed to present a defense and testify. The issue came before the court because of the claim by Long that the summary procedure provided for in La. C.C.P. art. 225 as applied has deprived him of the due process that the constitution guarantees. That Long is entitled to present a defense is in accord with summary proceedings; however, that Long must be tried by a jury and that such contempt claims must be instituted by a district attorney is antithetical to summary procedure. This court should not selectively address some but not all of the requirements for trial of a constructive contempt violation.[1]
This "majority" opinion is a constitutional innovation which emasculates the historic power of the trial judge to summarily punish for contempt.[2] Although denying that it is doing so, this view finds Louisiana's statutory provisions that allow for such summary proceedings, when punitive penalties are imposed for constructive contempt, to be unconstitutional.

Right To A Jury Trial
Mike Long and Beverly Hutchins had been romantically involved and in business together. When the two broke up a lawsuit was filed to obtain business and personal records. Incidental to that action, an injunction issued prohibiting Long from any contact with Ms. Hutchins or her daughter. Ms. Hutchins filed a rule for contempt claiming that Long had violated the injunction. The trial court found that Ms. Hutchins proved her allegations and sentenced Long to 120 days, suspending all but 20 days of the sentence.
Louisiana Code of Civil Procedure article 225 provides for a rule to show cause why a party should not be adjudged guilty of contempt. This rule may issued on the court's own motion or on motion of a party. Louisiana Revised Statute 13:4611 provides the punishment for contempt. For disobeying a restraining order, or preliminary or permanent injunction, the court may impose imprisonment for not more than twelve months and/or order payment of a fine of not more than one thousand dollars. For all cases falling under R.S. 13:4611(1)(b), the "majority" opinion would read in a right to a jury trial because the possible sentence could exceed six months. *565 If the actual sentence imposed was more than six months, I would agree; however, as in this case, when the sentence imposed is less than six months there is not a constitutional right to a jury trial.
Among other things, parties to divorce/domestic actions obtain injunctions against violence and harassment and to prohibit the disposing of community property. Domestic violence has been recognized as widespread and there are compelling reasons to swiftly adjudicate these type of cases. To illustrate the issue and bring some perspective, I note the Cherie Shipp case.
In 1996, Cherie Shipp, a resident of Webster Parish, fled from her abusive husband, Dalton. After receiving many threatening phone calls from Dalton, Cherie then fled to a cousin's home. When Dalton located her, he beat her with his fists and a telephone he ripped from a wall. Dalton pled guilty to two misdemeanors but imposition of sentence was postponed. Cherie filed an action in the Webster Parish District Court and obtained a temporary restraining order prohibiting Dalton from having any contact with her. Dalton, however, continued to make threatening calls. Unfortunately, Cherie did not file a contempt rule. Four months later Dalton tracked Cherie to the apartment of another of Cherie's sisters. Cherie, who was on crutches from a car accident, was forcibly seized and taken by Dalton to his house where she was beaten, raped, and shot in the chest with a shotgun. See State v. Shipp, 30,562 (La.App. 2d Cir.04/08/98), 712 So.2d 230; also, see Shipp v. McMahon, 234 F.3d 907 (5th Cir.(La.) 2000), cert denied, 532 U.S. 1052, 121 S.Ct. 2193, 149 L.Ed.2d 1024 (2001), on subsequent appeal, 54 Fed.Appx. 413 (5th Cir.(La.) 2002) (not selected for publication in the Federal Reporter, No. 02-30420) (a civil rights suit against Webster officials).
The summary procedures allowed by C.C.P. art. 225 would have allowed Cherie to bring Dalton back to court for a contempt charge and the court's intervention at that time might have stopped the escalation of violence. The "majority" view in the present case, by requiring a jury trial, would have delayed any official intervention by a year or more.[3]
The majority opinion is based solely on a 1968 United States Supreme Court case, Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), in which the court, in fact, considered the actual sentence imposed, not the possible sentence allowed by Illinois law, to find that the defendant was entitled to a jury trial. In Bloom, an Illinois court sentenced an attorney to two years for attempting to probate a forged testament. The Illinois Supreme Court found that its law allowed for a two-year sentence. Subsequent United States Supreme Court cases have reaffirmed a commitment to the proposition that a criminal contempt is not a crime of the sort that requires the right to a jury trial regardless of the penalty involved.
In 1974, the United States Supreme Court stated in Codispoti v. Pennsylvania, *566 418 U.S. 506, 512-513, 94 S.Ct. 2687, 2691, 41 L.Ed.2d 912 (1974):
Since that time, our decisions have established a fixed dividing line between petty and serious offenses: those crimes carrying a sentence of more than six months are serious crimes and those carrying a sentence of six months or less are petty crimes. Frank v. United States, 395 U.S. 147, 149-150, 89 S.Ct. 1503, 1505-1506, 23 L.Ed.2d 162 (1969); Baldwin v. New York, 399 U.S. 66, 69, 90 S.Ct. 1886, 1888, 26 L.Ed.2d 437 (1970). Under these cases, we plainly cannot accept petitioners' argument that a contemnor is entitled to a jury trial simply because a strong possibility exists that he will face a substantial term of imprisonment upon conviction, regardless of the punishment actually imposed. See Taylor v. Hayes, 418 U.S. 488, 94 S.Ct. 2697, 41 L.Ed.2d 897. (Emphasis added).
The court in Codispoti cited Bloom v. Illinois, supra. The maximum sentences in both Bloom and Codispoti could have surpassed and, in fact, did exceed six months. Louisiana's statute provides a maximum penalty of one year for the violation of an injunction; however, in the case sub judice, Long received only a 20-day jail term.
In 1994 the U.S. Supreme Court again expressed its commitment to the principle that it is the punishment imposed that determines the right to a jury trial. In International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 837-839, 114 S.Ct. 2552, 2562-2563, 129 L.Ed.2d 642 (1994), the court wrote:
The union's sanctionable conduct did not occur in the court's presence or otherwise implicate the court's ability to maintain order and adjudicate the proceedings before it. Nor did the union's contumacy involve simple, affirmative acts, such as the paradigmatic civil contempts examined in Gompers. Instead, the Virginia trial court levied contempt fines for widespread, ongoing, out-of-court violations of a complex injunction. In so doing, the court effectively policed petitioners' compliance with an entire code of conduct that the court itself had imposed. The union's contumacy lasted many months and spanned a substantial portion of the State. The fines assessed were serious, totaling over $52 million.FN5 Under such circumstances, disinterested factfinding and evenhanded adjudication were essential, and petitioners were entitled to a criminal jury trial.
FN 5[P]etty contempt like other petty criminal offenses may be tried without a jury," Taylor v. Hayes, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974), and the imposition only of serious criminal contempt fines triggers the right to jury trial. Bloom, 391 U.S., at 210, 88 S.Ct., at 1486. The court to date has not specified what magnitude of contempt fine may constitute a serious criminal sanction, although it has held that a fine of $10,000 imposed on a union was insufficient to trigger the Sixth Amendment right to jury trial. See Muniz v. Hoffman, 422 U.S. 454, 477, 95 S.Ct. 2178, 2190, 45 L.Ed.2d 319 (1975).... We need not answer today the difficult question where the line between petty and serious contempt fines should be drawn, since a $52 million fine unquestionably is a serious contempt sanction.
...
Our decision concededly imposes some procedural burdens on courts' ability to sanction widespread, indirect contempts of complex injunctions through noncompensatory fines. Our holding, however, leaves unaltered the longstanding authority *567 of judges to adjudicate direct contempts summarily, and to enter broad compensatory awards for all contempts through civil proceedings. See, e.g., Sheet Metal Workers v. EEOC, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986). Because the right to trial by jury applies only to serious criminal sanctions, courts still may impose noncompensatory, petty fines for contempts such as the present ones without conducting a jury trial. We also do not disturb a court's ability to levy, albeit through the criminal contempt process, serious fines like those in this case. (Emphasis added).
The 20-day jail term imposed upon Long is clearly not one which would require a jury trial. Domestic violence has become a national scandal. At a time when strengthened enforcement is needed, the imposition of the rigors of a criminal jury trial for simple violations of restraining orders would strangle and shut down the ability to swiftly interdict violations and coerce compliance with lawful orders of the court.

Right to Prosecution by the District Attorney
Louisiana Constitution Article Five, Section Two provides:
A judge may issue writs of habeas corpus and all other needful writs, orders, and process in aid of the jurisdiction of his court. Exercise of this authority by a judge of the supreme court or of a court of appeal is subject to review by the whole court. The power to punish for contempt of court shall be limited by law.
Louisiana law allows for summary proceedings for both direct and indirect contempt. Louisiana Code of Civil Procedure article 225(A) specifically provides that a rule to show cause why an offender should not be adjudged guilty of constructive contempt may issue on the court's own motion or on the motion of a party to the action or proceeding and shall state the facts alleged to constitute the contempt. Under this statute, Ms. Hutchins, as a litigant, had standing to move the court to consider whether Long was guilty of contempt as a result of his failure to abide by the prior court order enjoining contact, direct or indirect, with Ms. Hutchins or her daughter. In Jackson Avenue Foundation, Inc. v. Lassair, 03-1759 (La.App. 4th Cir.06/02/04), 876 So.2d 926, the court specifically upheld the right of a litigant to initiate and prove a punitive contempt charge for the violation of an injunction.
In Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 796, 107 S.Ct. 2124, 2132, 95 L.Ed.2d 740 (1987), the court observed that the ability to punish disobedience to judicial orders is regarded as essential to ensuring that the judiciary has a means to vindicate its own authority without complete dependence on the whim of other branches of government. "[C]ourts cannot be at the mercy of another branch [of government] in deciding whether such proceedings should be initiated."
The fact that private parties traditionally and naturally prosecute contempt proceedings is the fundamental difference between criminal cases and contempt proceedings. The Fourteenth Amendment's Due Process Clause does not impose upon states the requirement that charges be initiated by an independent state prosecutor.
We all agree that remand is proper but we have not given the trial court direction. Whether this type of contempt must be instituted by the district attorney and whether a jury trial is required is unclear. I concur in the remand.
NOTES
[1] Neither our prior writ order nor our original opinion held any provision of Louisiana law to be unconstitutional.
[2] The issue concerning the appropriate prosecuting authority in a criminal contempt proceeding will not be addressed in this opinion. This issue was not raised by Long and is not properly before this court for consideration or review.
[1] In this case before the original three judge panel, two judges took issue with the pretermission of the question of who must institute a contempt rule.
[2] The trial court needs direction; however, in this case four judges are in agreement while four judges disagree and one simply concurs. This leaves the trial court in a quandary.
[3] In addition, under the Domestic Abuse Assistance Statute, La. R.S. 46:2131, et seq., upon good cause shown in an ex parte proceeding, the court may issue a TRO (temporary restraining order) to protect a person who shows immediate and present danger of abuse. La. R.S. 46:2135(A). If the TRO is granted without notice, the matter shall be set for a hearing within 20 days, at which time cause must be shown why a protective order should not be issued. At the hearing, the petitioner must prove the allegations of abuse by a preponderance of the evidence. La. R.S. 46:2135(B). Further a violation of such an order shall be tried within 10 days of a filing of a motion for contempt by a party or on the court's own motion. La. R.S. 46:2137.